J-S09044-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: S.N.H., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: F.C.H., FATHER | : | No. 1361 MDA 2017 |

Appeal from the Decree July 24, 2017
In the Court of Common Pleas of Berks County
Orphans' Court at No(s):  85190

BEFORE:   GANTMAN, P.J., McLAUGHLIN, J., and PLATT*, J.

MEMORANDUM BY GANTMAN, P.J.:                    **FILED MARCH 28, 2018**

Appellant, F.C.H. ("Father"), appeals from the decree entered in the Berks County Court of Common Pleas Orphans' Court Division, which granted the petition of the Berks County Children and Youth Services ("BCCYS") for involuntary termination of Father's parental rights to his minor child, S.N.H ("Child").  We affirm and grant counsel's petition to withdraw.

In its opinion, the Orphans' Court fully and correctly set forth the relevant facts and procedural history of the case.[1]  Therefore, we have no reason to restate them.

As a preliminary matter, appellate counsel seeks to withdraw his representation pursuant to ***Anders v. California***, 386 U.S. 738, 87 S.Ct.

---

[1] This appeal is related to the appeal listed consecutively at No. 1362 MDA 2017 (J-S09045-18).

---

*   Retired Senior Judge assigned to the Superior Court.

1396, 18 L.Ed.2d 493 (1967) and **Commonwealth v. Santiago**, 602 Pa. 159, 978 A.2d 349 (2009). **Anders** and **Santiago** require counsel to: 1) petition the Court for leave to withdraw, certifying that after a thorough review of the record, counsel has concluded the issues to be raised are wholly frivolous; 2) file a brief referring to anything in the record that might arguably support the appeal; and 3) furnish a copy of the brief to the appellant and advise him of his right to obtain new counsel or file a *pro se* brief to raise any additional points the appellant deems worthy of review. **Santiago, supra** at 173-79, 978 A.2d at 358-61. Substantial compliance with these requirements is sufficient. **Commonwealth v. Wrecks**, 934 A.2d 1287, 1290 (Pa.Super. 2007). After establishing that counsel has met the antecedent requirements to withdraw, this Court makes an independent review of the record to confirm that the appeal is wholly frivolous. **Commonwealth v. Palm**, 903 A.2d 1244, 1246 (Pa.Super. 2006).

In **Santiago, supra**, our Supreme Court addressed the briefing requirements where court-appointed appellate counsel seeks to withdraw representation:

> Neither **Anders** nor **McClendon**[2] requires that counsel's brief provide an argument of any sort, let alone the type of argument that counsel develops in a merits brief. To repeat, what the brief must provide under **Anders** are references to anything in the record that might arguably support the appeal.

_____

[2] **Commonwealth v. McClendon**, 495 Pa. 467, 434 A.2d 1185 (1981).

*    *    *

Under ***Anders***, the right to counsel is vindicated by counsel's examination and assessment of the record and counsel's references to anything in the record that arguably supports the appeal.

***Santiago, supra*** at 176, 177, 978 A.2d at 359, 360. Thus, the Court held:

[I]n the ***Anders*** brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Id.*** at 178-79, 978 A.2d at 361.

Instantly, appellate counsel filed a petition to withdraw. The petition states counsel conducted a conscientious review of the record and determined the appeal is wholly frivolous. Counsel also supplied Appellant with a copy of the brief and a letter explaining Appellant's right to retain new counsel or proceed *pro se* to raise any additional issues Appellant deems worthy of this Court's attention. In the ***Anders*** brief, counsel provides a summary of the facts and procedural history of the case.[3] Counsel's argument refers to relevant law that might arguably support Appellant's

_____

[3] We disapprove of counsel's rhetoric in his brief, which borders on the extreme, as inappropriate and unnecessary.

- 3 -

issue. Counsel further states the reasons for his conclusion that the appeal is wholly frivolous. Therefore, counsel has substantially complied with the requirements of **Anders** and **Santiago**.

Father has not responded to the **Anders** brief *pro se* or with newly retained private counsel. Counsel raises the following issues on Father's behalf:

> DID THE TRIAL COURT ERR IN TERMINATING [FATHER'S] PARENTAL RIGHTS TO HIS CHILDREN BASED ON THE EXHIBITS AND TESTIMONY PRESENTED AT THE TIME OF [THE] HEARING ON JULY 24, 2017, PURSUANT TO THE PENNSYLVANIA ADOPTION ACT, 23 PA.C.S.A. SECTION 2511, AS [FATHER] DESIRES AN ADDITIONAL OPPORTUNITY TO COMPLETE REQUIRED SERVICES UPON HIS RELEASE FROM PRISON IN APPROXIMATELY ONE YEAR?
>
> IN THE ALTERNATIVE, SHOULD THE MOTHER OF THE CHILDREN BE AFFORDED AN ADDITIONAL OPPORTUNITY TO COMPLETE REQUIRED SERVICES UPON HER RELEASE FROM PRISON IN NOVEMBER 2017?

(**Anders** Brief at 3).[4]

_____

[4] Pennsylvania law on common law standing provides that a person can invoke the jurisdiction of a court to enforce private rights or maintain an action for the enforcement of such rights, only if that person has in an individual or representative capacity some real interest in the legal right that is the subject matter of the controversy. **In Interest of G.C.**, 673 A.2d 932, 935 (Pa.Super. 1996). **See generally In re T.J.**, 559 Pa. 118, 124, 739 A.2d 478, 481 (1999) (stating: "In determining whether a party has standing, a court is concerned only with the question of who is entitled to make a legal challenge and not the merits of that challenge"; "the purpose of the 'standing' requirement is to insure that a legal challenge is by a proper party"). Here, counsel says Father is abandoning his second issue because Mother did not appeal from the orders terminating her parental

*(Footnote Continued Next Page)*

Appellate review of termination of parental rights cases implicates the following principles:

> In cases involving termination of parental rights: "our standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child."

*In re Z.P.*, 994 A.2d 1108, 1115 (Pa.Super. 2010) (quoting *In re I.J.*, 972 A.2d 5, 8 (Pa.Super. 2009)).

> Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. … We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.
>
> *In re B.L.W.*, 843 A.2d 380, 383 (Pa.Super. 2004) (*en banc*), *appeal denied*, 581 Pa. 668, 863 A.2d 1141 (2004) (internal citations omitted).
>
> Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by the finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.
>
> *In re Adoption of A.C.H.*, 803 A.2d 224, 228 (Pa.Super. 2002) (internal citations and quotation marks omitted). The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

rights. In any event, Father would not have standing to raise issues related to Mother or on Mother's behalf. Therefore, we give Father's second issue on appeal no further attention.

as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. *In re J.D.W.M.*, 810 A.2d 688, 690 (Pa.Super. 2002). We may uphold a termination decision if any proper basis exists for the result reached. *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*). If the court's findings are supported by competent evidence, we must affirm the court's decision, even if the record could support an opposite result. *In re R.L.T.M.*, 860 A.2d 190, 191-92 (Pa.Super. 2004).

*In re Z.P., supra* at 1115-16 (quoting *In re Adoption of K.J.*, 936 A.2d 1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165 (2008)).

DHS filed a petition for the involuntary termination of Father's parental rights to Child on the following grounds:

**§ 2511. Grounds for involuntary termination**

**(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

(5) The child has been removed from the care of the

- 6 -

parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\* \* \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\* \* \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (a)(2), (a)(5), (a)(8), and (b). "Parental rights

may be involuntarily terminated where any one subsection of Section

2511(a) is satisfied, along with consideration of the subsection 2511(b)

provisions." *In re Z.P., supra* at 1117.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his… parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (internal citations omitted).

> Termination under Section 2511(a)(1) involves the following:

> > To satisfy the requirements of [S]ection 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. In addition,

> > > Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.

> > Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his… conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa.Super. 2008) (internal citations omitted). Regarding the six-month period prior to filing the termination

- 8 -

petition:

> [T]he trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his… parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B.,N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004), *appeal denied*, 582 Pa. 718, 872 A.2d 1200 (2005) (internal citations omitted).

The grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.,* (797 A.2d. 326, 337 (Pa.Super. 2002). "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities." *Id.* at 340. The fundamental test in termination of parental rights under Section 2511(a)(2) was long ago stated in the case of *In re Geiger*, 459 Pa. 636, 331 A.2d 172 (1975), where the Pennsylvania Supreme Court announced that under what is now Section 2511(a)(2), "the petitioner for involuntary termination must prove (1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In Interest of Lilley*,

719 A.2d 327, 330 (Pa.Super. 1998).

"Termination of parental rights under Section 2511(a)(5) requires that: (1) the child has been removed from parental care for at least six months; (2) the conditions which led to removal and placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." *In re Z.P., supra* at 1118.

"[T]o terminate parental rights under Section 2511(a)(8), the following factors must be demonstrated: (1) [t]he child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." *In re Adoption of M.E.P.*, 825 A.2d 1266, 1275-76 (Pa.Super. 2003). "Section 2511(a)(8) sets a 12–month time frame for a parent to remedy the conditions that led to the children's removal by the court." *In re A.R.*, 837 A.2d 560, 564 (Pa.Super. 2003). Once the 12–month period has been established, the court must next determine whether the conditions that led to the child's removal continue to exist, despite the reasonable good faith efforts of the Agency supplied over a realistic time. *Id.* Termination under Section 2511(a)(8) does not require the court to evaluate a parent's current willingness or ability to remedy the conditions that initially caused placement or the availability or efficacy of Agency services. *In re Adoption of T.B.B.*, 835 A.2d 387, 396 (Pa.Super. 2003);

***In re Adoption of M.E.P., supra***.

Under Section 2511(b), the court must consider whether termination will meet the child's needs and welfare. ***In re C.P.***, 901 A.2d 516, 520 (Pa.Super. 2006). "Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child. The court must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond." ***Id.*** Significantly:

> In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship.
>
> When conducting a bonding analysis, the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation.

***In re Z.P., supra*** at 1121 (internal citations omitted).

"The statute permitting the termination of parental rights outlines certain irreducible minimum requirements of care that parents must provide for their children, and a parent who cannot or will not meet the requirements within a reasonable time following intervention by the state, may properly be considered unfit and have his…rights terminated." ***In re B.L.L.***, 787 A.2d 1007, 1013 (Pa.Super. 2001). This Court has said:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and

support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this [C]ourt has held that the parental obligation is a positive duty which requires affirmative performance.

This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent exert [himself] to take and maintain a place of importance in the child's life.

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his… ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In re B.,N.M., supra* at 855 (internal citations omitted). "[A] parent's basic constitutional right to the custody and rearing of his…child is converted, upon the failure to fulfill his…parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *Id.* at 856.

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Scott D. Keller, we conclude Father's issues merit no relief. The Orphan's Court

- 12 -

opinion comprehensively discusses and properly disposes of the questions presented. (*See* Orphans' Court Opinion, filed September 12, 2017, at 1-8) (finding: Father has criminal history of drug related offenses dating back to 2006; Father is currently incarcerated and hopes to be released from prison in August 2018, but even with RRRI eligibility, his minimum release date would not be until early 2019; S.N.H. is developmentally delayed and special needs child; foster parents are actively meeting Child's needs; Child is thriving in foster home and bonded to foster parents; any bond Child might have to Father deteriorated to point that severance would not detrimentally affect Child; with exception of one visit, Father has not seen Child since Father's incarceration in February 2016; Child has received no letters, cards, gifts, or parental support from Father; given Father's extensive drug history and current incarceration, Father cannot remedy conditions, which led to Child's placement, within reasonable time; termination of Father's parental rights will serve Child's best interests; termination of Father's parental rights was proper under Section 2511(a)(1), (2), (5), and (b)). Following our independent review of the record, we conclude the appeal is frivolous. ***See Palm, supra***. Accordingly, we affirm on the basis of the Orphans' Court's opinion and grant counsel's petition to withdraw.

Decree affirmed; counsel's petition to withdraw is granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/28/2018

IN RE:

S.N.H.

F.H., Jr. a/k/a F.S.H.

: IN THE COURT OF COMMON PLEAS
: OF BERKS COUNTY, PENNSYLVANIA
: ORPHANS' COURT DIVISION
: No. 85190
: No. 85191

Jennifer L. Grimes, Attorney for BCCYS, Petitioner/Appellee
Molly Sanders, Guardian *Ad Litem* for S.N.H and F.S.H.
P. David Maynard, Attorney for F.C.H., Father
Kelly S. Kline, Attorney for J.C.G., Mother

OPINION, Scott D. Keller, S.J.                                    Dated: September 12, 2017

This matter came before the Court on the petitions of Berks County Children and Youth

Services ("BCCYS") to terminate the parental rights of J.C.G. a/k/a J.C.H. ("Mother") and

F.C.H. ("Father") to the children, F.H., Jr. a/k/a F.S.H.,[1]    D.O.B    2011, and

S.N.H.,    D.O.B    2016 ("the Children"). The petitions to involuntarily terminate

parental rights were filed on December 6, 2016 on the grounds set forth in 23 Pa.C.S.A.

§2511(a)(1), (2), and (5). The hearing was held on July 24, 2017. Mother was present via

telephone from          Boot Camp. Her court-appointed counsel was present in the

courtroom. Father was present via video from Prison. Father's court-appointed counsel

was physically present for the hearing. Upon conclusion of the hearing, the Court granted the

petitions to terminate parental rights to the Children. Father filed a timely Notice of Appeal and

a Concise Statement of Matters Complained of on Appeal.[2]

The statute at paragraph 2511(a)(1) provides that parental rights in regard to a child may

be terminated on the grounds that a "parent by conduct continuing for a period of at least six

---

[1] By Order dated April 25, 2017, the Child shall be known as F.S.H.
[2] Father's Concise Statement simply states that the Court erred in terminating his parental rights based on the exhibits and testimony presented and that he desires an additional opportunity for him and Mother to complete services. The Statement indicates that counsel believes the appeal to be frivolous.

1

months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties." Paragraph (a)(2) provides that parental rights may be terminated on the grounds that "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." Paragraph (a)(5) provides for termination of parental rights when a "child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child." "With respect to any petition filed pursuant to (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition." 23 Pa.C.S.A. § 2511(b).

"Parental rights may not be preserved by waiting for some more suitable financial circumstance or convenient time for the performance of parental duties and responsibilities." *In re: D.J.S.*, 737 A.2d 283, 287 (Pa. Super. 1999). The long-standing law of the Commonwealth is that the inability of a parent to perform parental duties makes him or her just as parentally unfit as a parent who refuses to perform these duties. *In re: B.L.W.*, 843 A.2d 380, 388 (Pa. Super. 2004). Regardless of inability or refusal, once a parent demonstrates a failure to fulfill his or her

2

parental duties, the child's right to fulfillment of his or her potential in a permanent, healthy, safe environment with proper parenting supersedes the parent's basic constitutional right to custody and rearing of the child. *Id.* In terminating the rights of a parent, the court must give "primary consideration to the developmental, physical, and emotional needs and welfare of the child." 23 Pa.C.S.A. §2511(b).

Incarceration is not in and of itself determinative of parental incapacity, but it "can be determinative of the question of whether a parent is incapable of providing 'essential parental care, control or subsistence.'" *In Re: Adoption of S.P.*, 47 A.3d. 817, 831 (Pa. 2012); *In re R.I.S. & A.I.S.*, 36 A.3d 567, 576 (Pa. 2011), Justice Baer concurring. "The length of the remaining confinement can be considered as highly relevant to whether 'the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent,' sufficient to provide grounds for termination pursuant to 23 Pa.C.S § 2511(a)(2)." *In Re: Adoption of S.P.*, 47 A.3d. at 831. If a parent will remain incarcerated for too long of a period of time to permit unification with a child "in a timely basis in order to provide the child with the permanent home to which he or she is entitled, then the length of sentence, standing alone, should and does meet the legal criteria for involuntary termination of the incarcerated parent's parental rights." *In re R.I.S. & A.I.S.*, at 576. "[T]he child's need for consistent parental care and stability cannot be put aside or put on hold simply because the parent is doing what [he] is supposed to do in prison." *In re E.A.P.*, 944 A.2d 79, 84 (Pa.Super.2008). "It is incumbent upon the judicial system to be child-focused." *In re R.I.S.*, 36 A.2d at 579.

This family came to the attention of BCCYS in 2011 due to Mother's testing positive for illegal substances upon giving birth to F.S.H., who also tested positive for methadone.[3] The agency opened the case for investigation and in-home services on March 5, 2012. In 2015,

---

[3] Mother testified that her positive test was for prescribed methadone.

3

further and on-going reports of substance abuse and mental health concerns caused BCCYS to re-open the case for investigation. In-home services were provided to address parenting issues, supervision of the children, and substance abuse. Both parents demonstrated a lack of progress and consistency with the services and alleviating the agency's concerns.

F.S.H. was adjudicated dependent in December 2015, but he remained in the physical custody of his parents.    In    2016, S.N.H. was born prematurely and addicted to opiates, codeine, and morphine, which required her to remain hospitalized until March 24, 2016. As the result of a drug raid, Father was incarcerated on February 10, 2016 on charges of manufacture and possession of drugs. On February 11, 2017, custody of F.S.H. was transferred to BCCYS. On March 7, 2016, Mother was incarcerated. Upon her release from the hospital, S.N.H. was adjudicated dependent and custody was awarded to BCCYS.

Mother and Father were ordered to participate in services, including parenting education, mental health evaluation and any recommended treatment, drug and alcohol evaluation and any recommended treatment, random urinalysis, and casework. The parents were also ordered to establish and maintain a stable environment.

Mother and Father both remained incarcerated throughout the Children's placement. They completed a few educational programs in jail. As of the time of hearing, Father was participating in a Therapeutic Community program and AA and NA in prison. Mother was engaged in a four-month-long drug and alcohol outpatient program that meets weekly as well as other educational programs. She also testified to meeting monthly with a psychiatrist.

With the exception of a May 3, 2017 special closure visit being granted to Mother by the Court, Mother and Father have not seen the Children since prior to their respective

4

incarcerations.[4] Father has had some telephonic contact with F.S.H. from jail, but active re-direction was required due to Father's inappropriate language and conversation topics. Mother has also had telephonic contact, but she is limited to one monthly call from her current detention at boot camp. Mother testified that she also sent email messages to her father to pass to F.S.H.

Mother and Father have maintained contact with BCCYS via letters and several casework service sessions at the jail. No letters addressed to the Children were produced. At no time have they explained how they intend to establish and maintain long-term environments that will be safe for themselves or the Children.

Mother has a criminal history dating back to 2005, mostly for drug-related offenses, some retail thefts, traffic citations, and probation violation. She has been struggling with drug abuse – first marijuana then cocaine – and mental health issues since she was about 14 years of age (1997). She started using heroin when she was 18. She has been in a number of inpatient rehabilitation facilities, but she has failed to maintain sobriety.

If she remains compliant, Mother is due to be released from boot camp on November 15, 2017. Her current plan upon release is to reside with her father in New Jersey. She will rely on him financially until she can find employment. While Mother's father is in agreement with having Mother reside with him and has maintained contact with the Children, he has not indicated to BCCYS that he is a long-term resource for them.

Mother has a third child who was 14 at the time of the hearing. During this child's infancy, concerns over Mother's care of this child and her substance abuse caused the involvement of the Warren County, New Jersey Child Protective Services. This child has been

---

[4] The closure visit was scheduled in light of Mother's signing a consent to the Children's adoption on April 26, 2017. Mother testified that she signed the consent because she did not want to drag the Children through the process anymore, they were comfortable in foster care, it was going to be difficult to get her life back on track, and the foster parents agreed to post-adoption contact. Mother revoked the consent on May 16, 2017 because she lost her trust in the foster family.

5

in the custody of his paternal grandmother in New Jersey since he was about one year old. Mother testified that her last contact with him was by letter approximately two months prior to the hearing and that the last time she talked to him was prior to her incarceration.

Father has a criminal history of drug-related offenses dating back to 2006. His first incarceration was at age 25. His drug history is similar to Mother's. He started using marijuana when he was 15 years old (1982) and heroin when he was 28 (1995). He had periods of sobriety, the longest being up to four years, but the longest period after conceiving F.S.H. was perhaps two years. Relapse and return to court was a regular problem for Father.

Father has two additional children, a daughter, 21, and a son, 28. He claimed to have some contact with them prior to his incarceration. He testified that he "made a mistake" with his older son, who after seeing Father in and out of jail has experienced his own incarcerations. Father does not want the same thing to happen with F.S.H. By the same token he acknowledged that his mistakes have caused his separation from the family. Father believes he can teach the Children a lot, including what is right and wrong, once he gets himself together.

Father is serving a four to twelve year sentence for which he is RRRI eligible. He testified that he had another year left, hopefully August 2018, but even with RRRI eligibility his minimum release date would not be until early 2019. He anticipates being paroled to a halfway house with a slow transition into the community. Father hopes that Mother will successfully complete boot camp and move on from there to obtain custody of the Children so he might too follow a similar path to reunification. Much of Father's plan is "hopefully."

F.S.H. has been fortunate to escape long-term effects of *in utero* drug exposure. Contrarily, S.N.H. is a developmentally delayed special needs child, but she is doing well with services. The foster parents have actively and ably met the Children's needs. The Children are

6

thriving in their foster home, and they are bonded to their foster parents. Any bond that the Children might have had to Mother and Father has deteriorated to the point that severance would not detrimentally affect the Children. Fortunately for the Children, the foster parents are long-term resources who can continue to meet their developmental, physical, and emotional needs.

F.S.H. remembers his parents, but Father does not know how the boy feels about the situation caused by his parents' incarceration. Mother believes F.S.H. wants to be with her again. S.N.H. was an infant when her parents were removed from her and would have no memory of them. The Children's guardian *ad litem* believes termination of parental rights is best for both Children.

With the exception of the closure visit between Mother and F.S.H., Mother and Father have not seen the Children since February 2016. In that time the only reason the Children (F.S.H. more so than S.N.H.) even know that Mother and Father continue to exist has been the occasional telephone call. The Children have received no letters, cards, gifts, nor any other parental support -- financial, emotional, or otherwise. Without the foster parents, the Children would have been completely without support or any other kind of parental control and subsistence. Given their extensive history of drug abuse and incarceration, and given that Mother and Father will each be incarcerated for at least several more months with a slow transition to the community thereafter, the Court has no expectation that Father or Mother can or will remedy their failures as parents and be 100% available for the Children in a reasonable period of time. The needs and welfare of the Children are paramount and cannot be held hostage for an unspecified and uncertain time that is more convenient for Mother and Father to hopefully one day be able to perform parental duties.

7

The Children are doing very well in their foster home. They are bonded with their foster parents to whom they look for love, safety, and support. Freeing the Children for adoption will provide them with the opportunity for permanency and stability and will be in their best interests.

For the foregoing reasons, the Court entered its Decrees terminating parental rights of Mother and Father to the Children.

BY THE COURT:

_____
Scott D. Keller, S.J.

Distribution: Clerk of the Orphans' Court; BCCYS Solicitor; Guardian Ad Litem; Attorney for Mother; Attorney for Father

Certified to be a true and correct copy of the original on file.

9-12-17     _____
Date        Clerk of Orphans' Court

8